IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DECUS, INC., *et al.* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 16-5849 |
| HEENAN, *et al.* | : | |
| | : | |

KEARNEY, J.                                                                                         April 18, 2017

# MEMORANDUM

Businesses disputing obligations owed to each other after a failed effort to work together may try, if only for leverage, to challenge their opponent on conduct even if it does not directly affect them. Federal courts require one business challenging another business' activity to have standing under Article III of the United States Constitution. Absent an injury in fact standing, a business cannot sue an opponent to correct alleged irregularities under state construction lien law. When, as here, a business claims its adversary has improperly placed liens on construction projects but the complaining business has no claim to the same funds or alternate lien on the construction project, the business lacks standing to ask this Court to strike the opponent's construction lien. In the accompanying Order, we grant the Plaintiff's motion to dismiss Defendants' counterclaim seeking to invalidate or obtain damages based on an allegedly invalid construction lien for properties where Defendants have no competing lien interest or other basis for standing.

## I.      Facts alleged in the Complaint and Counterclaim.[1]

We address a dispute between businesspersons who once agreed to work together in developing construction business. Decus, Inc. alleges it is a construction company owned by

Thomas Aloia and John Sciotto.[2] Heenan Holdings LLC ("Holdings") is a New Jersey construction company managed by Mark E. Heenan.[3]

In October 2015, Mr. Sciotto, Mr. Aloia, and Mr. Heenan began discussing a new business venture called Decus Construction, Inc.[4] The Decus brand developed a poor reputation and Mr. Sciotto and Mr. Aloia sought to partner with Mr. Heenan believing his positive reputation in the Southern New Jersey construction sector could rehabilitate the Decus brand.[5]

Mr. Sciotto proposed the three men be equal partners in the Decus Construction venture, and Mr. Aloia circulated a draft shareholders' agreement listing Mr. Heenan as a shareholder in Decus Construction.[6] As neither Decus, Inc. nor Decus Construction were registered to do business in New Jersey, the three men agreed they would contract New Jersey work through Holdings.[7] Mr. Sciotto and Mr. Aloia requested Holdings use the Decus name for its construction contracts.[8] Holdings accordingly registered Decus Construction as its alternative name.[9]

Although the three men agreed to be equal partners in Decus Construction, at some point Mr. Heenan discovered Mr. Aloia did not list Mr. Heenan as a shareholder in Decus Cosntruction.[10] Mr. Heenan, while believing he had equal ownership of Decus Construction, solicited work from former business associates, including the Gloucester Data Center and South Jersey CML (collectively, the "South Jersey Companies").[11] To facilitate projects with the South Jersey Companies, Mr. Heenan advanced over $21,000 to Decus, Inc., incurred costs, and performed work.[12]

Holdings and Mr. Heenan allege Decus, Inc. and Decus Construction did not have "valid" agreements with the South Jersey Companies and did not perform work on their projects.[13] Even

2

though Decus, Inc. lacked valid agreements and did not perform work on these projects, Mr. Sciotto, as the owner of Decus, Inc., filed liens on the properties at issue and sought compensation for services performed.[14]

Mr. Heenan and Holdings do not allege having an interest in the Decus liens. They do not allege filing their own liens on the subject properties, nor do they allege the South Jersey Companies failed to pay them for work performed on these projects.

Decus, Inc. and Decus Construction sued Mr. Heenan and Holdings for a variety of claims under state and federal law. In Count V of the counterclaim, Mr. Heenan and Holdings allege Decus, Inc., Mr. Sciotto, and Mr. Aloia filed baseless liens against the properties underlying the projects with the South Jersey Companies in violation of the New Jersey Construction Lien Law.[15] Mr. Heenan and Holdings request damages, costs, attorney's fees, and an order requiring withdrawal of the liens.[16]

## II. Analysis

The Decus Plaintiffs move to dismiss Count V of the counterclaim, arguing Mr. Heenan and Holdings do not have standing to contest the validity of the Decus liens.[17] Holdings and Mr. Heenan respond they have standing as contractors in contractual privity with the South Jersey Companies.

Whether a party has standing to sue in federal court is an issue of federal law.[18] A proponent of a legal right does not have standing to seek relief for claims based upon the rights of third parties.[19] Instead, Article III's "case or controversy" requirement obliges the proponent of a legal right to demonstrate: (1) an "injury in fact" or "invasion of a legally protected interest" which is "concrete and particularized"; (2) a "causal connection between the injury and

conduct"; and (3) a likelihood "the injury will be redressed by a favorable decision."[20] Although a statute can broaden the categories of injury which may be alleged in support of standing,[21] a lawmaking body cannot obviate Article III's standing requirements "by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."[22] The complaining party must still have an injury-in-fact.[23]

The Decus plaintiffs argue Mr. Heenan and Holdings lack an "interest" in the Decus liens and lack standing to challenge the propriety of the Decus liens.[24] Mr. Heenan and Holdings have the burden of alleging facts demonstrating standing.[25]

To resolve standing, we first review New Jersey's Construction Lien Law ("Lien Law") to determine whether it creates "legal rights, the invasion of which creates standing."[26] In general, the Lien Law affords unpaid contractors the right to file a lien against the property worked upon and affirmatively enforce the lien in an enforcement action in the New Jersey Superior Court, and any objections to a lien's validity may be resolved in the enforcement action.

Under the Lien Law, a contractor "who provides work, services, material or equipment pursuant to a contract" is "entitled to a lien for the value of the work or services performed" under the contract.[27] A contractor is defined as "any person in direct privity of contract with the owner of real property."[28] To recover the value of its work or services, the contractor must file a lien specifying the claimant's identity, the contractual relationship with the owner, other known parties in the construction chain, and the work or services performed.[29] The lien attaches to the "interest of the owner or unit owner of the real property development."[30]

A lien claimant must affirmatively enforce a lien by filing an enforcement action in the New Jersey Superior Court.[31] "Venue shall be laid in the county in which the real property

4

affected by the lien claim is located."[32] The lien claimant must join as parties any person "having an interest in the real property that would be adversely affected by the judgment."[33]

The Lien Law authorizes costs and attorney's fees expended on "defending or causing the discharge" of a baseless lien: "If a lien claim is without basis," the lien claimant is "liable for all court costs, and reasonable legal expenses . . . incurred by the owner, community association, contractor or subcontractor . . . in defending or causing the discharge of the lien claim" and the court must "enter judgment against the claimant for damages to any of the parties adversely affected by the lien claim."[34] A lien claim is "without basis" if it is "frivolous, false, unsupported by a contract, or made with malice or bad faith or for any improper purpose."[35]

Holdings and Mr. Heenan allege standing to challenge the Decus liens and a right to statutory remedies under the Lien Law by virtue of their status as contractors in direct privity with the property owners.

The parties do not dispute Holdings and Mr. Heenan have a right to challenge a baseless lien under the Lien law even though their challenge is outside the context of a lien enforcement proceeding. In *Kvaerner Process, Inc. v. Barham-McBride Joint Venture*, the New Jersey Superior Court, Appellate Division, held a contractor could sue a subcontractor directly for filing a baseless lien because the contractor was "a party in interest."[36] The court found the contractor to be a party in interest to the subcontractor's lien because the Lien Law "authorizes an owner, 'upon receipt of notice of a lien claim, . . . to withhold and deduct the amount claimed from the unpaid part of the contract price . . . due and payable to the contractor.'"[37] Although the Lien Law creates a lien enforcement mechanism with procedures for discharging improper liens, "[n]othing in the [Lien Law] indicates that the remedies are exclusive."[38]

5

While the court in *Kvaerner* recognized a contractor's right to challenge a subcontractor's baseless lien outside of the context of an enforcement proceeding, the court did not address the contractor's standing to object to a baseless lien. Our Court of Appeals in *Sewer v. Martin* clarified—in the context of a grantor's lien—the circumstances in which a lienholder has standing to object to a property foreclosure.[39] A grantor's lien is an equitable right in land retained by a grantor—who has no other security interest in the land—which the grantor retains until the grantee pays the entire purchase price.[40] The grantor lienholder in *Sewer* argued the district court improperly ordered foreclosure of the property without joining other parties having junior liens on the property.[41] Our Court of Appeals held the grantor lienholder had standing because it had an interest in ensuring the foreclosure sale resulted in the "highest possible" bid price for the property.[42] The grantor lienholder's interest in the foreclosure sale proceeds would be adversely affected by a foreclosure sale conducted without joining junior lienholders, because absent joinder, the junior lienholders would retain their interests in the land, which "would undoubtedly chill the bidding."[43]

Holdings and Mr. Heenan do not allege they filed liens against the properties underlying the projects with the South Jersey Companies. They accordingly cannot allege a judicial sale would potentially have an adverse impact on their own interest in the properties. Holdings and Mr. Heenan similarly do not allege the South Jersey Companies failed to pay them, or Decus' successful enforcement of its purported lien rights could somehow adversely affect Holdings' or Mr. Heenan's rights to compensation for services performed on the properties.

Nor do Holdings and Mr. Heenan allege a contractor-subcontractor arrangement similar to the arrangement in *Kvaerner*. In *Kvaerner*, even though the court did not address standing,

6

the contractor had a plausible basis for standing to the extent the property owner exercised its statutory right to withhold part of the contractor's unpaid contract proceeds to pay the subcontractor.[44] Holdings and Mr. Heenan do not allege a contractor-subcontractor relationship with Decus, Inc., Mr. Aloia, or Mr. Sciotto.

Although Mr. Heenan and Holdings are "contractors" in contractual privity with the South Jersey Companies with the right under the Lien Law to seek withdrawal of baseless liens, they may litigate this claim in federal court only upon demonstrating an Article III injury-in-fact. The Lien Law cannot confer Article III standing where an injury-in-fact does not otherwise exist.[45] Mr. Heenan and Holdings do not allege an Article III injury-in-fact.

### III. Conclusion

Because Holdings and Mr. Heenan fail to allege an Article III injury-in-fact, we dismiss their claim in Count V for violations of the Lien Law without prejudice to file an amended counterclaim demonstrating standing if warranted under Federal Rule of Civil Procedure 11.

---

[1] We "accept all factual allegations as true, construe the complaint in the light most favorable to the [nonmoving party], and determine whether, under any reasonable reading of the complaint, the [nonmoving party] may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

[2] *Id.* at p. 10, ¶¶ 6, 9; ECF Doc. No. 1, ¶ 9. Mr. Heenan and Holdings are "without knowledge or information sufficient to form a belief as to the truth" of whether Decus, Inc. is a construction company. ECF Doc. No. 10, at p. 2, ¶ 9.

[3] ECF Doc. No. 10, at p. 10, ¶¶ 1–3.

[4] ECF Doc. No. 10, at p. 11, ¶ 18.

[5] *Id.* at p. 12, ¶¶ 20–21.

[6] *Id.* at p. 12, ¶¶ 19, 22.

[7] *Id.* at p. 12, ¶ 26.

[8] *Id.* at p. 12, ¶ 27.

[9] *Id.* at p. 13, ¶ 29.

[10] *Id.* at pp. 12–13, ¶¶ 19, 23, 30.

[11] *Id.* at p. 13, ¶ 34.

[12] *Id.* at p. 14, ¶ 37.

[13] *Id.* at pp. 14, 19, ¶¶ 38, 72–73.

[14] ECF Doc. No. 10-1, at pp. 26, 32.

[15] N.J.S.A. 2A:44A-15.

[16] ECF Doc. No. 10, at p. 19.

[17] "In reviewing facial challenges to standing, we apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).
The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

[18] *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994).

[19] *Rakas v. Illinois*, 439 U.S. 128, 139 (1978).

[20] *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d at 633 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

[21] *Lujan*, 504 U.S. at 578 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 738 (1972)).

[22] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)).

[23] *Lujan*, 504 U.S. at 578.

[24] ECF Doc. No. 16-1, at p. 3.

[25] *Spokeo, Inc.*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

[26] *Lujan*, 504 U.S. at 578 (quoting *Warth*, 422 U.S. at 500).

[27] N.J.S.A. § 2A:44A-3(a). Subcontractors and suppliers are also entitled to file liens. *Id.*

[28] *Id.* § 2A:44A-2.

[29] *Id.* § 2A:44A-6(a)(1).

[30] *Id.* § 2A:44A-3(a).

[31] *Id.* § 2A:44A-24.1(a).

[32] *Id.*

[33] *Id.* § 2A:44A-24.1(b).

[34] *Id.* § 2A:44A-15(a).

[35] *Id.* § 2A:44A-15(d).

[36] *Kvaerner Process, Inc. v. Barham-McBride Joint Venture*, 845 A.2d 692, 697–98 (N.J. Super. App. Div. 2004).

[37] *Id.* at 697 (quoting N.J.S.A. 2A:44A-12) (brackets omitted).

[38] *Id.* at 698.

[39] *Sewer v. Martin*, 511 F.2d 1134, 1138 (3d Cir. 1975).

[40] *Id.* at 1136–37.

[41] *Id.* at 1138.

[42] *Id.*

[43] *Id.*

[44] *Kvaerner Process, Inc.*, 845 A.2d at 697 (quoting N.J.S.A. 2A:44A-12).

[45] *Spokeo, Inc.*, 136 S. Ct. at 1547–48 (quoting *Raines*, 521 U.S. at 820 n.3).