| DECUS, INC., *et al.* | : **CIVIL ACTION** |
| | : |
| v. | : |
| | : **NO. 16-5849** |
| HEENAN, *et al.* | : |
| | : |

**KEARNEY, J.** **April 2, 2018**

## MEMORANDUM

After evaluating credibility of witnesses describing widely varied reasons for a failed business relationship, our jury unanimously found the individual Defendant fraudulently induced the relationship by failing to disclose an earlier employer fired him and the reasons for firing him. The jury awarded $18,000 in compensatory damages and $225,000 in punitive damages for this fraud. The jury found once the individual Defendant induced the relationship, both he and his company followed up with tortious interference, conversion, breach of contract, unjust enrichment, and violating the Lanham Act. The jury awarded compensatory and punitive damages on the conversion and tortious interference claims, but not the others.

The Defendants now move for a new trial or to alter the jury verdict arguing we erred in admitting evidence of the reason an earlier employer fired the individual Defendant; and, the jury awarded grossly excessive compensatory and punitive damages on all claims. We agree with the individual Defendant only as to the excessiveness of $225,000 in punitive damages for fraud after finding $18,000 in compensatory damages. Consistent with due process, we amend the verdict to award $18,000 in punitive damages for fraud against each Defendant consistent with the jury's approximate 1:1 ratios of punitive to compensatory damages awarded for the tortious interference and conversion claims. We otherwise deny the Defendants' motion.

## I.    Background adduced from trial evidence.

Decus, Inc. and Decus Construction, Inc. (together "Decus") perform general construction and construction management services. Based on individual Defendant Mark Heenan's representations, including a resume showing extensive contacts in the New Jersey construction community without mentioning his earlier employer fired him, Decus entered into a consulting agreement with Mr. Heenan. Mr. Heenan owns Heenan Holdings, LLC (together, "Heenan"). The business relationship between the parties devolved when Decus discovered Heenan attempted to divert business opportunities away from Decus to Heenan Holdings. Decus sued Heenan for fraud in inducing the consulting relationship, tortious interference with contract, conversion, breach of contract, unjust enrichment, trademark infringement, and cyberpiracy under the Lanham Act. Heenan counterclaimed for breach of contract, fraud, conversion, and tortious interference with contract.

On its fraud claim, Decus alleged it entered into a consulting agreement with Mr. Heenan to develop business, procure new contracts, and perform project management services for Decus. Decus alleged Mr. Heenan made representations regarding his work history with, and ownership in, Hessert Corp. and Hessert Construction Management (together "Hessert Construction") owned by William Hessert. Decus alleged Mr. Heenan represented he voluntarily left Hessert Construction on good terms. Decus contends it reasonably relied on Mr. Heenan's representations regarding his employment with Hessert Construction understanding Mr. Heenan would have good relationships in the construction community and would otherwise assist Decus's small business grow particularly in New Jersey.

Decus later learned Mr. Heenan did not voluntarily leave Hessert Construction on good terms; Decus learned Mr. Hessert fired Mr. Heenan after he discovered Mr. Heenan placed a

2

baby monitor video camera in a restroom of Hessert Construction ("baby monitor incident"). Mr. Heenan admitted to owning the baby monitor, explaining he put the monitor in the restroom because he wanted to test the monitor's low-light capabilities. Mr. Hessert testified to the baby monitor incident, including retaining a private investigator. Mr. Hessert admittedly destroyed the content of the baby monitor video upon firing Mr. Heenan. Mr. Heenan and Mr. Hessert sued each other in New Jersey state court resulting in depositions contemporaneous with our progress in this case and eventually – shortly before our trial – resolving their New Jersey case.

Before trial, Heenan moved in limine to exclude "all evidence related to the Hessert/Heenan dispute and Baby Monitor situation" as not relevant and the probative value is outweighed by prejudice under Federal Rules of Evidence 401 and 403.[1] We denied Heenan's motion in limine, finding Decus pleaded the materiality of Mr. Heenan's work history representations in the parties' negotiations making relevant the grounds of his departure from Hessert Construction.[2] Heenan additionally objected to Decus's designations from Mr. Hessert's video deposition, including an objection on the basis of hearsay to Mr. Hessert's testimony regarding the investigator's report. We did not allow the investigator's report into evidence but allowed Mr. Hessert to generally describe his state of mind in firing Mr. Heenan.

After trial, the jury returned a verdict in favor of Decus on its claims of fraud, tortious interference with contractual relations, conversion, breach of contract, unjust enrichment, and service mark claims under the Lanham Act.[3] The jury did not award damages for all claims. The jury awarded to Decus and Decus Construction each $18,000 in compensatory damages and $225,000 in punitive damages on the fraud claims against Mr. Heenan alone; $400,000 in compensatory damages and $500,000 in punitive damages on the intentional interference with contractual relations claims; and $150,000 in compensatory damages and $150,000 in punitive

3

damages on the conversion claims.[4] The jury did not award damages after finding liability for breach of contract, unjust enrichment and under the Lanham Act. The jury also awarded Mr. Heenan $9,000 on his breach of contract counterclaim. We entered judgment after entry of the jury's verdict.[5]

## II. Analysis

Mr. Heenan and his company move for a new trial arguing we erred in admitting evidence of the reason Mr. Hessert fired him and because the jury awarded excessive damages. Heenan alternatively asks we amend the judgment to reduce the jury's damages award for fraud, tortious interference and conversion as excessive. We deny the motion for a new trial but we find the jury's punitive damages award for fraud violates the due process clause and grant Heenan's motion to amend the judgment to reduce the punitive damages award to be equal to the compensatory damages award.

### *Reviewing new trial motion challenging admission of evidence.*

Under Rule 59(a)(1)(A), we "may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action in federal court."[6] Rule 59 does not provide specific grounds to grant a new trial, leaving the decision to our discretion.[7] Motions for new trial may be granted where there is "substantial error in the admission or exclusion of evidence; error in the court's instructions to the jury; where the jury's verdict [is] inadequate or excessive; or where the verdict [is] against the weight of the evidence."[8] Our court of appeals cautions we should grant a motion for new trial "only when 'the great weight of the evidence cuts against the verdict and ... [ ] a miscarriage of justice would result if the verdict were to stand.'"[9]

The scope of our discretion depends on the basis of the motion for a new trial.[10] Heenan

4

first argues we erred in our pre-trial evidentiary ruling admitting evidence relating to the baby monitor incident. Our "latitude on a new trial motion is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court, *e.g.* evidentiary rulings . . .."[11] Heenan asserts the standard is plenary review, because we are "reviewing a ruling on the admissibility of evidence which depends on an interpretation of the Federal Rules of Evidence," citing *Barker v. Deere and Co.*[12] In *Barker*, an appeal in a products liability case, defendant moved for a new trial arguing the district court erred in allowing plaintiffs to introduce evidence of earlier tractor rollovers when the case did not involve a rollover.[13] Our court of appeals applied the abuse of discretion standard to a district court's evidentiary rulings under Federal Rules of Evidence 401, 402, and 403.[14] When the court of appeals reviews "a ruling on the admissibility of evidence which turns on an interpretation of a Federal Rule of Evidence, [its] review is plenary."[15] There is a difference between evidentiary rulings applying the rules of evidence to the facts of a case, and a challenge to our interpretation of a rule of evidence, a legal inquiry to which plenary review is applied. Here, we applied the rules of evidence to the facts of Mr. Heenan's placing the baby monitor in the restroom alleging leading to Mr. Hessert ending the employment – the issue of fraud in inducing the consulting relationship with Decus. Mr. Heenan presented his defense based on his hope to test the baby monitor and he forgot he left it in the bathroom. We were not interpreting a rule of evidence. We applied a rule of evidence to this disputed material issue of Mr. Heenan's conduct which may, or may not, have led to Hessert firing him.

### *Reviewing new trial motion based on compensatory v. punitive damages awards.*

Heenan's second argument for a new trial is the excessiveness of the compensatory and punitive damages for fraud, tortious interference, and conversion. We apply different standards

5

to reviewing these two types of damages.

We may disturb a jury's compensatory damages verdict "only if it is so grossly excessive that it shocks the judicial conscience."[16] Under the Seventh Amendment, our review of compensatory damages is limited to determining if the jury had a rational, evidentiary basis for their award.[17] The jury's award of compensatory damages must be upheld unless it is "clearly, decidedly, or overwhelmingly against the weight of the evidence."[18]

Heenan challenges the punitive damages awards as grossly excessive and arbitrary under the Due Process Clause of the Fourteenth Amendment. Unlike compensatory damages generally left to the jury's discretion under the Seventh Amendment, "the level of punitive damages is not really a 'fact' 'tried' by the jury."[19] Punitive damages are not compensation for injury based on fact determinations, but more akin to private fines designed to punish and deter reprehensible conduct.[20] We defer to the jury's fact finding on whether to award punitive damages but not as to the amount of punitive damages. Our review of whether the jury's punitive damages award comports with due process is an "exacting" standard under which we do not defer as we would in reviewing liability and compensatory damage verdicts.[21]

### *Reviewing motion to alter or amend the judgment.*

Heenan alternatively moves to alter or amend the judgment. Federal Rule of Civil Procedure 52(b) provides "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings - or make additional findings - and may amend the judgment accordingly." Rule 52(b) allows us "to correct plain errors of law or fact, or, in limited situations, to allow the parties to present newly discovered evidence."[22] The standard is similar to a motion for reconsideration or to alter judgment under Rule 59(e), which may be granted where Heenan shows at least one of the following "(1) an intervening change in the controlling law; (2)

6

the availability of new evidence that was not available when the court granted the motion ...; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[23]

Decus argues Heenan's Rule 59 motion must be denied because Heenan failed to move for directed verdict. Under Rule 50, "[i]f a party fails to move for judgment as a matter of law at the close of all the evidence, the party waives the right to a post-trial attack on the sufficiency of the evidence."[24] Heenan's challenge is not to the *sufficiency* of the evidence; rather, it is a challenge to evidentiary rulings and the excessiveness of damages awarded.[25] Heenan is not precluded from moving under Rules 52(b) and 59 for an amendment of the judgment.[26]

### A. Admitting evidence relating to the baby monitor incident is not erroneous.

Heenan argues we erred in admitting evidence relating to the baby monitor incident, contending such evidence is (1) irrelevant and prejudicial; (2) inadmissible hearsay; and (3) inadmissible character evidence. We employ a two-step inquiry to determine whether to grant a new trial under Rule 59 based on evidentiary rulings; we determine whether error occurred and we then apply Rule 61 to determine whether any error "affect[ed] any party's substantial rights."[27]

### 1. Admitting evidence of the baby monitor incident is not irrelevant or unfairly prejudicial.

Heenan argues the baby monitor incident is irrelevant under Federal Rule of Evidence 401 and should have been excluded under Rule 402. Heenan further argues even if the baby monitor evidence is relevant and admissible, it should be excluded under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice. Heenan contends the baby monitor incident is not relevant because it is "simply not related" to the issues in this litigation and instead relates to "untried allegations" made by Mr. Hessert against Mr. Heenan in "a completely different company [without] any bearing on the issues" in this case.

7

We found the reason Mr. Hessert terminated Mr. Heenan's employment directly relevant to Decus's claim Mr. Heenan misrepresented his separation from Hessert Construction. We explained the relevance of the evidence in our Order denying Heenan's motion in limine.[28] We explained Decus pleaded the materiality of Mr. Heenan's work history representations in the parties' negotiations making relevant the grounds of his departure from Hessert Construction.

Heenan argues even if the evidence is relevant, it is unfairly prejudicial because "it is indisputable that Plaintiffs' continuous and prejudicial reference to these allegations during trial provoked the jury's instinct to punish, and incited the jury to base its decision on the allegations of Hessert . . . as opposed to making a rational decision upon the established propositions in the case" and "a large portion of the testimony regarding these allegations was presented to the jury in the middle of Defendants' case, after the Plaintiffs closed their case, adding to further jury confusion and prejudice."

Mr. Heenan testified to his separation from Hessert Construction. Mr. Heenan testified he decided to leave Hessert Construction because of increasingly differing views in managing the company given the increased and apparently recent involvement of Mr. Hessert's children in his business. Mr. Heenan also explained he sought better opportunities in his own name given his expanding relationships in the construction business. Mr. Heenan told Decus he left Hessert on good terms.

After Mr. Heenan described his reasons for leaving Hessert Construction, Decus introduced Mr. Hessert's video trial deposition regarding the reasons he terminated Mr. Heenan, including the baby monitor incident. We limited Mr. Hessert's deposition based on Heenan's objections to deposition designations.[29] Mr. Heenan had a full opportunity to testify as to the baby monitor incident relative to his separation from Hessert Construction. He had the benefit of

8

Mr. Hessert's deposition testimony which would be shown to the jury.

Under Rule 403, we may exclude relevant evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice. There is no unfair prejudice here. Decus's fraud claim is based on Mr. Heenan failing to disclose being fired and why Hessert fired him. Decus's officers testified they would not have hired Heenan had they known of the baby monitor incident. We appreciate this reliance is somewhat challenged by Decus's attempts to work with Heenan after learning of the baby monitor incident. But those credibility findings are left to the jury. Mr. Heenan forcefully described his reasons for leaving Hessert. He denied the fraud claim. Decus's claim based on the baby monitor incident required describing the facts.

Much admitted evidence is prejudicial to someone. We expect trial lawyers will not waste the jury's time with evidence which does not prejudice the opponent's arguments. The test is whether the evidence is unfairly prejudicial. The baby monitor incident occurred. As testified, its effect on Decus is material. We cannot preclude evidence of the reason Hessert may have fired Mr. Heenan because, if the jury believes it, the evidence of a baby monitor in a restroom may offend sensibilities. Mr. Heenan explained his reasons for having the baby monitor in the restroom. No one claimed Mr. Heenan left the baby monitor in the restroom for an improper purpose. A jury could have readily accepted Mr. Heenan accidentally left the baby monitor in the restroom while testing it. But the reason Mr. Heenan left the baby monitor in the restroom is not dispositive; the issue is whether Mr. Heenan concealed the reason for Hessert Construction's firing him. Even interpreting the facts in the light most favorable to Mr. Heenan, Hessert Construction fired him at least partially because of the baby monitor incident. To the extent Heenan now objects to the number of times Decus referred to this evidence, Heenan did not object at trial and has waived an objection to repetitive questions.

### 2. There is no basis for a hearsay objection to the baby monitor report because it was not admitted into evidence.

Heenan next objects to the introduction of the baby monitor incident and investigator's report as inadmissible hearsay. To the extent Heenan objects to the report itself, the parties never moved the exhibit into evidence at trial. To the extent Heenan objects to Mr. Hessert's testimony regarding the investigator's report, it is not hearsay. We limited Mr. Hessert's testimony regarding the investigation and the investigator's report, sustaining Heenan's hearsay objections regarding the investigation as alleged in his counterclaim in the New Jersey state court litigation between Heenan and Hessert.[30] Although Heenan objected on the basis of hearsay to portions of Mr. Hessert's video deposition regarding the investigation, the testimony is not hearsay. In those portions, Mr. Hessert testified to his own actions stated in the investigator's report, including testifying to his own knowledge of a baby monitor camera found in the restroom, his belief the camera was covertly placed, and his decision to destroy the camera's recording. The parties never introduced the report itself and any testimony from Mr. Hessert about the report came from his own knowledge.

### 3. Evidence regarding the baby monitor incident was not introduced as character evidence prohibited by Rule 404(b).

Heenan contends evidence of the baby monitor incident is impermissible character evidence of prior bad acts in violation of Federal Rule of Evidence 404(b). Rule 404(b) provides "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[31] Heenan's objection is misplaced. The baby monitor evidence was not introduced to prove Mr. Heenan's character "in order to show that on a particular occasion [he] acted in accordance with the character." We admitted the evidence as relevant to Decus's fraud claim based on Mr.

10

Heenan's representations about his work history with Hessert. Our case did not involve use of a camera or other recording device while Heenan served as a consultant for Decus.

**B. We amend the verdict only to reduce the punitive damages for fraud.**

Heenan also argues we should order a new trial or alternatively amend the judgment because the jury's compensatory damages are not "reasonably certain" and the jury did not explain its calculations and otherwise awarded excessive punitive damages violative of due process. The jury's compensatory damages findings are based on the evidence. We agree with Heenan as to the jury's punitive damages award of $225,000 for fraud for each Plaintiff after the jury found $18,000 in compensatory damages.

We decline to order a new trial based on the jury's punitive damages for fraud. A new trial interferes with our jury's careful deliberations after evaluating credibility of conflicting witnesses. The preferred remedy for damages award which is excessive in one limited part and thus violative of due process is to amend our judgment as to the excessive damages rather than toss the entire verdict and order a new trial.[32]

**1. The compensatory damage award is based on the evidence.**

Heenan argues the compensatory damages are excessive and "not reasonably certain as there is no explanation, calculation, or basis" on the fraud, intentional interference with contractual relations, and conversion claims.

Heenan has a "heavy burden" in seeking a new trial under Rule 59, and an even "greater burden" where, as here, they seek a reduction in the jury's compensatory damages verdict.[33] Generally, "the determination of compensatory damages is within the province of the jury and is entitled to great deference."[34] We give deference to a jury's damages verdict, disturbing it "only if it is so grossly excessive that it shocks the judicial conscience . . ."[35] or "clearly unsupported

11

by the evidence."[36] Where there is a challenge to damages as grossly excessive, our court of appeals identified its standard of review as "exceedingly narrow," and will not disturb a jury's decision "so long as there exists sufficient evidence on the record, which if accepted by the jury, would sustain the award."[37] We must not substitute our own "judgment of the facts and the credibility of the witnesses for that of the jury."[38] We view the facts in the light most favorable to Decus.[39]

Heenan challenges the amounts awarded on each of these claims arguing, without citing authority, the jury did not explain or calculate how it reached the amounts it awarded or what evidence it relied on to make its calculations. Decus argues, generally, we may only grant a new trial where the verdict is against the weight of the evidence; we must defer to the jury's role as fact finder and may not substitute our own judgment for the jury; and the jury's compensatory award need not be based on mathematical certainty.

### *Fraud compensatory damages.*

On the fraud claims, Heenan appears to challenge the factual basis for the jury's award. Heenan argues the evidence shows Decus Construction, Inc. formed on November 27, 2015, after Mr. Heenan gave Decus his resume on October 16, 2015 and after Mr. Heenan and Decus entered into the consulting agreement. Heenan further argues the evidence shows Decus did not receive Heenan's "project list" until June 2016, and could not have been defrauded by it. Heenan contends the jury nevertheless awarded Decus Construction $18,000 in compensatory damages and made such an award even though Decus, Inc. entered into the consulting agreement with Mr. Heenan. Heenan further argues evidence at trial showed Mr. Heenan received only $12,000 under the consulting agreement. Heenan contends there is no basis for awarding both Decus, Inc. and Decus Construction $18,000 each, and is duplicative, the amount awarded is

12

incorrect, and the jury failed to explain or calculate how it reached the $18,000 figure, including the evidence it relied on to make such an award.

In response, Decus argues its fraud claims are not based solely on the damages incurred as a result of payments to Heenan under the consulting agreement, but are also based on damages resulting from lost business opportunities from Mr. Heenan's misrepresentations. Decus further argues Decus Construction suffered damage by Heenan's fraud based on lost business opportunities, and the jury heard evidence of damage suffered by Decus.

We defer to the jury's verdict. The parties adduced evidence of losses caused by Mr. Heenan obtaining a consulting role. The $18,000 award of compensatory damages can arguably be derived from funds paid to Mr. Heenan. We also note the jury awarded Mr. Heenan $9,000 on his breach of contract counterclaim. The jury, strictly following our instructions, first evaluated Decus's claim for inducing the consulting relationship in awarding $18,000 and then evaluated Mr. Heenan's breach of contract counterclaim in awarding him $9,000. Decus also induced evidence of the harm to both Plaintiffs from Mr. Heenan's fraud as both companies operated together but suffered separate losses caused by retaining Mr. Heenan as a consultant.

## *Tortious interference compensatory damages.*

On the intentional interference with contractual relations claims, Heenan objects to the jury's award of $400,000 compensatory damages to Decus, Inc. and $1,168,000 to Decus against Heenan Holdings. Heenan argues the jury did not demonstrate how it arrived at these amounts or what evidence it relied on in making the calculation, arguing the evidence at trial showed one contract with a value of $72,920; change orders in the amount of $76,650 which were never executed, performed, or paid; and Decus's receipt of $21,433 from Heenan. According to Heenan, taking the contract and change orders together less the amount paid by Heenan, Decus is

13

entitled to no more than $128,137. Heenan argues this amount is corroborated by the lien Decus made on the Gloucester Data Center Project, the one contract identified at trial. Heenan similarly argues the amount to Decus, Inc. from Heenan Holdings can only be $51,487 ($72,920 less $21,433), and not the $1,168,000 awarded.

Decus responds it presented evidence at trial to support interference with numerous contracts, resulting in lost profits in excess of $4 million, including evidence of the $4 million calculation.[40] Decus argues Mr. Heenan's trial testimony supports the damages calculation because he counterclaimed for damages in the amount of $4 million as a result of Decus's alleged interference with the same contracts, and the jury made a credibility determination. Decus argues Heenan failed to show the compensatory damages are against the weight of the evidence.

We agree with Decus. The parties adduced evidence of lost contracts arguably worth millions of dollars. The jury believed Decus and not Heenan. We do not interfere with the jury's credibility decisions nor do we require the jury to produce the calculation worksheets. We rely on trial lawyers to adduce evidence supporting, or challenging, damages before the jury begins deliberations.

### *Conversion compensatory damages.*

On the conversion claims, Heenan similarly challenges the $150,000 awarded to Decus, Inc. against Mr. Heenan and Heenan Holdings each. Heenan argues there is no explanation or calculation for these awards, including the evidence relied on to base the awards.

Decus responds the trial evidence shows Heenan converted $128,137 and $134,570 on two projects, as testified by both Decus and Mr. Heenan who admitted to cashing one of the amounts for his own use and documentary evidence Mr. Heenan whited-out his address on the

14

checks. Decus argues the compensatory damages on the conversion claims are supported by the evidence at trial, and are not against the weight of evidence. We again defer to the jury based on the adduced evidence.

We allowed the parties to argue a variety of claims and defenses typical of a dispute involving a failed business venture. The jury heard evidence on each of the claims. The closing arguments addressed each of these issues. The jury reviewed specific invoices with claimed losses. We charged the jury, after the parties' consent, on the need to prove damages for each claim. With the parties' consent, we charged the jury on the nature of the damages award consistent with the Third Circuit Model Jury Instructions. The jury found an evidentiary basis for compensatory damages for fraud, tortious interference and conversion. Although finding Decus proved liability on the other claims, the jury found Decus did not prove compensatory damages for breach of contract, unjust enrichment, and under the Lanham Act.

Heenan challenges the wisdom of the jury's findings. Heenan disagrees; they cannot understand how the jury arrived at these calculations. But as long the evidence can support a jury finding with all deference to the jury's diligent efforts, we cannot piecemeal overrule a jury's calculations. The jury based its compensatory damages award on the ample adduced evidence.

### 2. We uphold the punitive damages on tortious interference and conversion but reduce the $225,000 in punitive damages for fraud.

Heenan objects to the punitive damages as grossly excessive in violation of the due process clause, particularly the punitive damages awarded on Decus's fraud claim which are 12.5 times the amount of compensatory damages. Unlike a challenge to the jury's fact findings including whether the evidence supports a punitive damages award, we must perform an "exacting" review of the punitive damage awards to ensure "an award of punitive damages is based upon an 'an application of law, rather than a decisionmaker's caprice.'"[41] We do not defer

15

to the jury's findings in reviewing the constitutionality of the punitive damages award.[42]

"The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."[43] To determine whether a punitive damages award violates due process, "courts must consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."[44]

As this commercial litigation does not involve civil penalties, we focus on the first two guideposts.[45]

### *Degree of reprehensibility*

The first factor – reprehensibility of the defendant's misconduct – is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award."[46] The Supreme Court provides five additional factors to determine the reprehensibility factor: "(1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident."[47]

Applying the five subfactors, Heenan asserts Decus suffered purely economic harm; Heenan's conduct did not demonstrate an indifference or reckless disregard for the health or safety of others; Decus is not particularly financially vulnerable; Heenan's conduct only involved Decus, "lending the repeated conduct subfactor less weight"; and, although Decus contends Heenan caused harm through fraud, the weight of the evidence does not demonstrate Heenan

16

defrauded Decus. Heenan admits two of the factors supports the punitive damages award, but argues it is only "slight" support.

Decus argues the first two subfactors do not "necessarily" apply to the facts here, but the last three factors "strongly justify" the imposition of punitive damages. Decus points to the trial testimony of Mr. Aloia and Mr. Sciotta who testified Heenan's conduct rendered Decus financially vulnerable, damaging it monetarily and in reputation, hampering Decus's ability to earn more work. Decus contends its financial vulnerability in the context of Mr. Heenan's position as a consultant for Decus where he converted Decus's checks for his own use, interfered in Decus's existing contracts, used the Decus logo on contracts with third parties, and closed Decus's website. Decus contends its harm was the result of Heenan's intentional malice.

The jury reviewed ample evidence of reprehensible conduct during the parties' relationship. While Mr. Heenan disagrees as to his motive to harm, the evidence can be fairly interpreted to find he lied to get the consulting role and then, after obtaining Decus's trust, began to manage Decus's business opportunities as his own without disclosing his limited consulting role. Heenan wrongly viewed himself as a partner in Decus.

In applying the first two subfactors, we are not today addressing physical harm or risk to the health and safety of others caused by Heenan's conduct. As in many commercial cases, we address economic loss. Our court of appeals has recognized economic torts are "less worthy of large punitive damages awards than torts inflicting injuries to health or safety."[48] But we cannot preclude punitive damages in all commercial cases simply because no one is physically injured and the party found to be engaged in misconduct did not place the health and safety of others at risk. Those factors apply more readily to commercial cases involving harm which the businesses may know will occur to the public based on their reckless business decisions. The jury did not

17

hear evidence of this type of reprehensible conduct.

But punitive damages are available in commercial cases. Applying the last three subfactors, the jury heard ample evidence of Decus's smaller size and risks to business in the construction market. Decus, particularly in Heenan's New Jersey market, faced reputational and financial vulnerability. Decus's witnesses testified as to their hope Heenan would help establish or grow name recognition and business, particularly in the large scale industrial projects, in New Jersey. Heenan admitted his value derived from his ability and reputation to find opportunities for Decus in New Jersey. We heard testimony from Heenan witnesses confirming they only knew of Heenan. Decus qualifies as financially vulnerable especially given the evidence of Heenan's ability to control opportunities in New Jersey.

The evidence also strongly confirmed repeated acts intended to interfere, defraud and convert Decus's contractual opportunities. It cannot be argued Heenan's tortious interference conduct occurred on a continuum. The parties introduced evidence of at least two disputed projects where Heenan engaged in similar conduct to interfere with Decus's ability to obtain relationships and otherwise convert Decus's assets. Heenan also repeatedly concealed his fraud in obtaining the consulting role and Heenan converted checks. While Heenan now argues the only victim is Decus, the evidence at trial also showed at least two South Jersey construction projects – and the jobs and revenue attendant to them – which did not happen due to Heenan's interference.

The evidence supports a finding of reprehensibility necessary for punitive damages to survive a due process challenge on the three claims for which the jury awarded compensatory damages: fraud; tortious interference; and conversion.

18

### *Disparity between the actual or potential harm and the punitive damages award*

To satisfy due process, we next examine the alleged disparity between the actual or potential harm Decus suffered and the punitive damages award. The ratios of punitive to compensatory damages awarded here are 12.5:1 on the fraud claims; 1.25:1 on the intentional interference with contractual relations claim awarded to Decus, Inc. against Mr. Heenan; less than 1:1 on the intentional interference with contractual relations claim awarded to Decus, Inc. against Heenan Holdings, LLC; and 1:1 on the conversion claims.[49] Heenan argues the punitive damages awarded here are grossly excessive in violation of due process, particularly with respect to the 12.5:1 ratio on the fraud claims against Mr. Heenan. Decus argues the disparity on the fraud claim is justified in this case because of Mr. Heenan's outrageous conduct.

In *Campbell*, the Supreme Court noted its "reluctance to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award."[50] The "constitutional line" is not "marked by a simple mathematical formula," and the Supreme Court does not "impose a bright-line ratio which a punitive damages award cannot exceed."[51] The Supreme Court cautioned, however, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."[52] The Court recognized its earlier decisions finding "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety."[53] The Court left open the possibility some ratios greater than it previously upheld may comport with due process where "a particularly egregious act has resulted in only a small amount of economic damages" or where "the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine," directing the award in any case "must be based upon the

19

facts and circumstances of the defendant's conduct and the harm to the plaintiff."[54]

Heenan argues the punitive damages are grossly excessive and we must amend the judgment. If we find the punitive damages awarded by the jury's verdict here are unconstitutionally excessive, we have "a mandatory duty to correct [it] so that it conforms to the requirements of the due process clause."[55]

Decus does not cite authority for awarding punitive damages above a single-digit ratio. Our review of cases from this District show approval of ratios between 1.3:1 and 9:1[56] and from our court of appeals approving ratios between 1:1 and 7:1.[57] In cases "where compensatory relief is substantial, a large ratio of punitive to compensatory damages is especially likely to be excessive."[58] In such cases, where the awarded compensatory damages is already substantial, our court of appeals identified ratios between 1:1 and 2:1 as providing us helpful guidance in our constitutional analysis.[59]

The jury's award of punitive damages for tortious interference and conversion are tied almost directly to the compensatory damages. These ratios of 1.25:1 and 1:1 pass our due process analysis.

The jury's award of $225,000 in punitive damages for each Plaintiff against Mr. Heenan arising from his fraudulent misrepresentation of his employment history does not pass our due process analysis. The jury found Mr. Heenan obtained a consulting role through misrepresenting his departure for Hessert Construction including why Mr. Hessert fired him. While we found the evidence of his baby monitor incident admissible for the fraud, it does not warrant a $225,000 punitive award for Decus and Decus Construction. While we can find the nondisclosure is reprehensible and agree as to its materiality, we cannot reconcile a 12.5:1 ratio for punitive damages for fraud. While Mr. Heenan consistently concealed the reasons for his termination, the

20

harm created by his fraud is limited in time to being hired as a consultant and then, once having access to Decus's relationships, proceeding to harm its future opportunities. But claims for the harm after inducing the consulting agreement are covered by Decus's claims for conversion and tortious interference.

A ratio of 1:1 for the fraud punitive damages passes constitutional muster. We have no evidence suggesting Heenan intended for his nondisclosure to cause substantial compensatory damages. An $18,000 punitive damages award is reasonable and proportionate to the harm suffered by Decus. A greater ratio, under the circumstances of this commercial dispute, is "greater than reasonably necessary to punish and deter."[60]

We must reduce the amount of punitive damages awarded for fraud consistent with due process. Decus chose not to ask us to remand for a new trial should we need to reduce the rather plain concern with a punitive damages award at 12.5:1 ratio with compensatory damages. Absent Decus's request to remand and mindful the due process exacting scrutiny of the amount of punitive damages is largely a question of law, we decline to order a new trial and will today amend the judgment relating to punitive damages for fraud consistent with due process.

## III. Conclusion

The jury heard ample evidence of the reasons why the consulting relationship between Heenan and Decus failed. The parties sued each other and presented their conflicting reasons. The jury returned a verdict based on the evidence, including Mr. Heenan failing to disclose his earlier employer fired him and the reasons for the firing. The jury awarded compensatory and punitive damages for fraud, tortious interference, and conversion. Although finding Heenan breached a contract, unjustly enriched himself, and violated the Lanham Act, the jury could find no damages attributable to this conduct. The jury also awarded compensatory damages to Mr.

21

Heenan on his breach of contract counterclaim. We defer to these fact findings.

In reviewing whether the amount of the punitive damages is consistent with due process, we do not defer to the jury but apply an exacting scrutiny to its verdict. After applying this scrutiny, we must amend the judgment in the accompanying Order to reduce the jury's punitive damages award for fraud to a 1:1 ratio with its compensatory damages award and the approximate amount of punitive damages awarded for conversion and tortious interference. We grant Heenan's motion to amend the judgment in part only to reduce the amount of punitive damages for fraud and otherwise deny the motion for new trial or to amend.

---

[1] ECF Doc. No. 56-1. Heenan also moved to preclude an August 5, 2016 email, but our ruling on the email is not a basis of Heenan's motion for a new trial.

[2] ECF Doc. No. 63.

[3] Decus voluntarily dismissed the cyberpiracy claim under the Lanham Act at trial.

[4] ECF Doc. No. 76. The jury found in favor of Mark Heenan on his conversion counterclaim, awarding $9,000 in favor of Mark Heenan and against Decus Construction, Inc. *Id.*

[5] ECF Doc. No. 79.

[6] Fed.R.Civ.P. 59(a)(1)(A).

[7] *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) ("The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court.") (citing *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36 (1980)).

[8] *Snider v. Sterling Airways, Inc.*, No. 13-2949, 2017 WL 3873540, at *2 (E.D. Pa. Sept. 5, 2017) (citations omitted).

[9] *Leonard v. Stemtech Int'l Inc.,* 834 F.3d 376, 386 (3d Cir. 2016) (quoting *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006)).

[10] *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993).

[11] *Id.* (citing *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir. 1990)).

[12] 60 F.3d 158, 161 (3d Cir. 1995).

[13] *Id.* at 160.

[14] *Id.* at 161.

[15] *Id.* (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994)).

[16] *Leonard*, 834 F.3d at 391 (citing *William A. Graham Co. v. Haughey*, 646 F.3d 138, 142 (3d Cir. 2011)).

[17] *Id.* at 392 (quoting *Cortez*, 617 F.3d at 718).

[18] *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1061-1062 (10th Cir. 2016) (citing *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)).

[19] *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 437 (2001) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 459 (1996) (Scalia, J. dissenting)).

[20] *Cooper Indus., Inc.*, 532 U.S. at 432 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)).

[21] *Lompe*, 818 F.3d at 1062.

[22] *Roadmaster (USA) Corp. v. Calmodal Freight Sys., Inc.*, 153 F.App'x 827, 829 (3d Cir. 2005).

[23] *In re Vehicle Carrier Services Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017) (quoting *Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010); *see also N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) ("holding that a proper motion to alter or amend judgment must rely on one of three major grounds" "(1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; or (3) the need to correct clear error [of law] or prevent manifest injustice"), and *Gutierrez v. Ashcroft*, 289 F.Supp. 2d 555, 561 (D.N.J. 2003) (relief under Rule 52(b) and Rule 59(e) are "substantially similar").

[24] *Spada v. Martinez*, 663 F.App'x 112, 114 (3d Cir. 2016) (citing *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1262 (3d Cir. 1991)).

[25] *Vargo v. Coslet*, 126 F.App'x 533, 535 (3d Cir. 2005) (citing *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 365 (3d Cir. 1999)).

[26] Although Rule 52(b) and Rule 59 "both allow a party to move in the district court for an amendment . . .", a motion under Rule 59(e) "seeks an alteration or amendment of a judgment, often by the way of the court's finding of additional facts," while Rule 52(b) "seeks only the

correction of findings or the finding of additional facts without the amendment of the judgment." 12-59 Moore's Federal Practice - Civil § 59.05 (2018). "Rule 52(b) motions are often accompanied by, or brought simultaneously with, Rule 59(e) motions to amend the judgment." 9-52 Moore's Federal Practice - Civil § 52.60 (2018).

[27] Fed.R.Civ.P. 61; *Gardner-Lozada v. Septa*, No. 13-2755, 2015 WL 4505949, at *5 (E.D. Pa. July 24, 2015).

[28] ECF Doc. No. 63.

[29] ECF Doc. No. 73.

[30] *Id.*

[31] Fed.R.Evid. 404(b)(1).

[32] *Bedrock Stone and Stuff, Inc. v. Mfrs. and Traders Trust Co.,* No. 04-2101, 2006 WL 890993, at *15 (E.D.Pa. March 31, 2006) (citing *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992)).

[33] *Impala Platinum Holdings, Ltd. v. A-1 Specialized Servs. and Supplies, Inc.*, No. 16-1343, 2017 WL 2840352, at *5 (E.D. Pa. June 30, 2017).

[34] *Id.* (quoting *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1204 (3d Cir. 1986)).

[35] *Leonard*, 834 F.3d at 391-92 (citing *Wm. A. Graham Co. v. Haughey*, 646 F.3d 138, 142 (3d Cir. 2011) (*Graham II*).

[36] *Impala Platinum Holdings, Ltd.*, 2017 WL 2840352 at * 5 (quoting *Dee v. Borough of Dunmore*, 474 F.App'x 85, 87 (3d Cir. 2012)).

[37] *Cortez*, 617 F.3d at 718; *Thabault v. Chait*, 541 F.3d 512, 522 (3d Cir. 2008).

[38] *Leonard*, 834 F.3d at 391-92 (quoting *Graham II*, 646 F.3d at 143).

[39] *Impala Platinum Holdings, Ltd.*, 2017 WL 2840352 at * 5 (quoting*Cortez*, 617 F.3d at 718-19)).

[40] Joint Exhibit 20 at H692.

[41] *Lompe,* 818 F.2d at 1061 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)).

[42] *Lompe,* 818 F.2d at 1062.

[43] *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 188 (3d Cir. 2007) (quoting *Campbell*, 538 U.S. at 416).

[44] *Id.* (quoting *Campbell*, 538 U.S. at 418).

[45] *CBG Occupational Therapy, Inc.*, 499 F.3d at 190 (quoting *Campbell*, 538 U.S. at 419). In *CBG Occupational Therapy*, our court of appeals did not apply *Campbell's* third guidepost – the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases – finding it "is not instructive" in tortious interference with contractual relations claims and common law tort claims. *Id.* at 189-90 (citing *Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 468 (3d Cir. 1999)). We will not apply the third guidepost because the claims here are common law fraud, intentional interference with contract, and conversion claims, and neither party asks us to apply the third guidepost.

[46] *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 363 (3d Cir. 2015) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996)).

[47] *Campbell*, 538 U.S. at 419.

[48] *Inter Med. Supplies, Ltd.,* 181 F.3d at 467 (quoting *Cont'l Trend Res. v. OXY USA, Inc.*, 101 F.3d 634, 638 (10th Cir. 1996)).

[49] ECF Doc. No. 76.

[50] *Campbell*, 538 U.S. at 424 (citing *Gore*, 517 U.S. at 582).

[51] *Id.* at 424-25.

[52] *Id.* at 425.

[53] *Id.* at 425 (citing *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23-24 (1991) and *Gore*, 517 U.S. at 581).

[54] *Id.* at 425 (citing *Gore*, 517 U.S. at 582); *CBG Occupational Therapy, Inc.*, 499 F.3d at 193-95 (finding "no special circumstances" to justify disparity between punitive and compensatory damages awards).

[55] *Cortez v. Trans Union, LLC*, 617 F.3d 688, 715-16 (3d Cir. 2010) (explaining the difference between remittitur when a district court believes the jury's verdict is unreasonable on the facts and a "constitutional reduction" based on a determination the law does not permit the award) (citing *Johanson v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999)). Heenan does not ask for remittitur, but a new trial based on the constitutionality of the jury's award of punitive damages.

[56] *Zielinski v. SPS Tech. LLC*, No. 10-3106, 2001 WL 5902214, at *11 (E.D. Pa. Nov. 22, 2011) (reducing ratio of 2:1 to 1.31:1); *Dixon-Rollins v. Experian Info. Solutions, Inc.*, 753 F.Supp. 2d 452, 463-67 (E.D. Pa. 2010) (reducing ratio from 16.67:1 to 9:1 based on *Campbell* and *Gore* factors, concluding the 9:1 ratio appropriate considering the modest compensatory award, Defendant's relative size and wealth, and repeated FCRA violations); *Walston v. Home Depot USA, Inc.*, No. 09-3395, 2010 WL 3069678, at *3 (E.D. Pa. Aug. 3, 2010) (denying motion for judgment as a matter of law and, alternatively, remittitur, on a verdict awarding a 6:1 ratio where compensatory damages were relatively modest and jury could properly consider strong potential for substantial physical harm, and award punitive damages to deter conduct).

[57] *In re Lansaw*, 853 F.3d 657, 670-71 (3d Cir. 2017) (4:1 ratio upheld); *Brand Mktg. Grp. LLC*, 801 F.3d at 365-66 (5:1 ratio upheld); *Cortez*, 617 F.3d at 723-24 (2:1 ratio upheld); *In re Bayside Prison Litig.*, 331 F.App'x 987, 993-94 (3d Cir. 2009) (remanding to the district court 4.5:1 ratio for further consideration of punitive damages award); *Jurinko v. Med. Protective Co.*, 305 F.App'x 13, 10-13 (3d Cir. 2008) (reducing a 3.13.:1 ratio to 1:1); and *CBG Occupational Therapy*, 499 F.3d at 193 (2007) (18:1 ratio unconstitutional, reduced to slightly less than 7:1 ratio).

[58] *In re Bayside Prison Litig.*, 331 F.App'x 987, 993 (3d Cir. 2009); *Jurinko v. Med. Protective Co.*, 305 F.App'x 13, 27 (3d Cir. 2008) ("[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee") (footnote omitted) (quoting *Campbell*, 538 U.S. at 425).

[59] *Id.* at 993 n.10 (collecting cases).

[60] *Lompe*, 818 F.3d at 1074 (quoting *Haslip*, 499 U.S. at 22).